IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE WILSON, | ) | CASE NO. 5:16 CV 2509 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Denise Wilson, for disability insurance benefits. The Commissioner has answered[2] and filed the transcript of the administrative record.[3] Under my initial[4] and procedural[5] orders the parties have briefed

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document order dated October 13, 2016.

[2] ECF # 10.

[3] ECF # 11.

[4] ECF # 7.

[5] ECF # 12.

their positions.[6] and filed supplemental charts[7] and the fact sheet.[8] They have participated in a telephonic oral argument.[9]

**A.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Wilson, who was 46 years old at the time of the administrative hearing,[10] did not graduate high school, but has a GED.[11] Her past relevant employment history includes work as a lab technician and a stocker at WalMart.[12]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Wilson had severe impairments consisting of bilateral knee problems, tinnitus, urinary incontinence, and obesity (20 CFR 404.1520 (c)).[13] The ALJ made the following finding regarding Wilson's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant may frequently kneel, crouch, crawl, may occasionally climb ramps and stairs, but may never climb ladders, ropes, or scaffolds; the claimant may not be exposed to more than

---

[6] ECF # 13 (Wilson's brief), ECF #18 (Commissioner's brief), ECF #19 (Wilson's reply brief).

[7] ECF # 18-1 (Commissioner's charts); ECF # 13-2 (Wilson's charts).

[8]  ECF # 13-1.

[9] ECF # 21.

[10] ECF # 13-1 at 1.

[11] *Id.*

[12] *Id.*

[13] ECF # 11, Transcript ("Tr.") at 17.

moderate noise levels and will be off-task ten percent of the day for additional bathroom breaks.[14]

The ALJ decided that this residual functional capacity precluded Wilson from performing her past relevant work.[15]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Wilson could perform.[16] The ALJ, therefore, found Wilson not under a disability.[17]

**B.    Issues on judicial review**

Wilson asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Wilson presents the following issues for judicial review:

- Whether the ALJ articulated valid reasons for rejecting the opinion of treating source, Dr. Shah and did she properly weight the factors for evaluating a treating source opinion.

- Whether the ALJ lacked substantial evidence to support her RFC and her Step 5 finding of not disabled and did the ALJ's RFC evaluation violate SSR96-8p.[18]

---

[14] *Id.* at 18.

[15] *Id.* at 24.

[16] *Id.*

[17] *Id.* at 25.

[18] ECF # 13 at 1.

# Analysis

**A. Standards of review**

*1. Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *The treating source rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

---

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[22] 20 C.F.R. § 404.1527(d)(2).

[23] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[29] *Id.* at 535.

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[33] *Id.* at 546.

[34] *Id.*

[35] *Id.*

[36] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[38] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[39] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[40] *Blakley v. Commissioner of Social Security*,[41] and *Hensley v. Astrue*.[42]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[43] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[44] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's

---

[37] *Id.*

[38] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[39] *Id.* at 375-76.

[40] *Rogers*, 486 F.3d at 242.

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[43] *Gayheart*, 710 F.3d at 376.

[44] *Id.*

opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[45] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[46]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[47] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[48] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[49] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[50] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[51]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[52] *Id.*

[53] *Rogers*, 486 F.3d 234 at 242.

[54] *Blakley*, 581 F.3d at 406-07.

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[59]

- the rejection or discounting of the weight of a treating source without assigning weight,[60]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[61]

---

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[59] *Blakley*, 581 F.3d at 407-08.

[60] *Id.* at 408.

[61] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[62]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefore,[63] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[64]

The Sixth Circuit in *Blakley*[65] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[66] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[67]

In *Cole v. Astrue*,[68] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[62] *Id.* at 409.

[63] *Hensley*, 573 F.3d at 266-67.

[64] *Friend*, 375 F. App'x at 551-52.

[65] *Blakley*, 581 F.3d 399.

[66] *Id.* at 409-10.

[67] *Id.* at 410.

[68] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[69]

**B.      Application of standard**s

This matter involves the interrelated questions of whether the ALJ articulated valid reasons for rejecting the functional opinion of Wilson's treating physician, Dr. Nilesh Shah, and whether the resulting Step Five finding of no disability is supported by substantial evidence. Essentially, Wilson argues that had Dr. Shah's opinion been properly evaluated and credited, a more restrictive hypothetical would necessarily have been propounded to the Vocational Expert, resulting in a finding of disability.

For the reasons that follow, I will recommend finding that the decision of the Commissioner is not supported by substantial evidence, and that the matter should be remanded for further consideration in light of the reasons given here.

Dr. Shah's opinion - which specifically notes the need for Wilson to change positions and be off-task fifteen percent of the time[70] - was considered at some length by the ALJ, who correctly noted that Dr. Shah was Wilson's treating physician and further that Dr. Shah offered his functional opinion "within the bounds of his professional certification" as an orthopedic specialist.[71] In addition, the ALJ also observed that Dr. Shah's "opinion is

---

[69] *Id.* at 940.

[70] Tr. at 23.

[71] *Id*.

consistent with the recent radiographic evidence...." As pointed out by Wilson, Dr. Shah's opinion is consistent with Wilson's own testimony and the opinions of the other medical sources, including the consultative evaluator.[72] Moreover, the ALJ on the record describes Dr. Shah's functional opinion as "reasonable."[73]

Thus, with Dr. Shah's "reasonable" opinion acknowledged to be within his professional competence, supported by the clinical evidence and well supported by other medical opinion in the record, the ALJ's decision to accord only "some" weight to this opinion must depend solely on the identification of some exceptionally good reason or reasons why an otherwise reasonable, credible and well-supported opinion from a recognized treating source is not entitled to controlling weight.

The ALJ here offers three reasons on the face of the opinion:

1. The restrictions "are not consistent" with Wilson's activities of maintaining her household[74] and caring for her elderly parents and grandchildren;[75]
2. A mention of a "possible" need to reposition herself during a workday is not consistent with the opinion that she has no restrictions on sitting;[76]
3. None of Wilson's records from other medical providers "suggest that [Wilson's] concentration is variable" or that she has a history of "no-shows"

---

[72] See, ECF # 13 at 12 (citing record).

[73] Tr. at 23.

[74] The ALJ makes a point of identifying this as a "two-story" home. *Id*.

[75] *Id.*

[76] *Id*.

-14-

at her medical appointments that could serve as a basis for an opinion as to her being absent at work or off-task during a workday.[77]

The ALJ here makes his first point on the basis of an implied equivalence between activities of daily living and the requirements of working consistently over an eight-hour workday. This has been addressed many times by reviewing courts, which uniformly note that the ability to perform certain tasks at home or with family or even as part of a therapeutic program, often on an intermittent or infrequent basis, is "hardly consistent with eight hours' worth of typical work activities."[78] This false equivalence is particularly apparent in cases like this one where the impairment is rooted in pain, which may be tolerable over limited periods of time but which becomes debilitating in the context of a full eight-hour workday with only minimal breaks.

The ALJ next attempts to claim that Dr. Shah's opinion was so inherently flawed by a significant internal inconsistency that it cannot receive more than some weight. In this, the ALJ cites to the opinion's statement that Wilson may possible need to re-position herself - a statement that the ALJ asserts is fundamentally incompatible with the rest of the opinion because it did not also specify a limitation on sitting.

---

[77] *Id.*

[78] *Kalmbach v. Comm'r of Social Security*, 409 Fed. Appx. 852, 864 (6th Cir. 2011); *Osterland v. Comm'r of Social Security*, No. 3:15 CV 9901, 2016 WL 4576092, at * 10 (N.D. Ohio Aug. 11, 2016)(collecting cases).

The ALJ here relies on a rather tortured reading of Dr. Shah's note. In full, Dr. Shah stated: "[Wilson] can do a sit down job, but with her back issues may need to change positions at times."[79]

Plainly, Dr. Shah's observation contemplates the possibility that Wilson would potentially need to change positions during the day even while working at a sedentary job - *i.e.*, a sit-stand option. As such, although Dr. Shah did not actually include a verbal neon sign in this section of the opinion labeled "limitation on sitting," this portion of Dr. Shah's opinion does set forth a potential limitation on Wison's ability to sit for the entirety of an eight-hour workday that is commonly known as a "sit-stand option." For the reasons stated above, the ALJ's critique in this respect does not constitute a good reason to downgrade a treating source opinion otherwise supported by medical and opinion evidence.

Finally, the ALJ's contends that Dr. Shah's assessment of the time Wilson would be off-task has no support in the record because there is no mention of Wilson failing to show up for scheduled appointments with medical providers - a fact the ALJ links to Wilson having no problem with "concentration."[80] Just as there is very little obvious correlation between infrequent actions done in the course of daily living and the consistent demands of regular work, so too is it hard to see any obvious or necessary link between Wilson's ability

---

[79] Tr. at 501.

[80] *Id*. at 23.

to show up for scheduled medical appointments[81] and her ability to remain consistently on-task for an eight-hour workday, five days a week. Without more, this reason is also not a good reason for downgrading the opinion of Dr. Shah.

In sum, and for the reasons stated, the Commissioner has not stated good reasons for downgrading the functional opinion of Dr. Nilesh Shah in this case. I recommend that this case be remanded.

As noted above, the second stated issue here, which involves whether the RFC has the support of substantial evidence, is closely related to the issue of how the ALJ treated Dr. Shah's opinion. By not including limitations set out by Dr. Shah in the RFC or in hypothetical question posed to the Vocational Expert, the resulting opinion of the VE cannot be substantial evidence to support the finding of no disability. If my recommendations as to the first issue are accepted, it follows that the second issue would also need to be re-evaluated on remand.

## Conclusion

For the reasons stated above, I recommend finding that the decision of the Commissioner denying benefits to Denise Wilson be found not supported by substantial evidence, and further therefore recommend that this matter be remanded for further

---

[81] It is noted in this regard that the 2015 the record shows that Wilson had nine medical appointments with various providers - or fewer than one per month. See, ECF # 13, attachment 2 (Wilson's charts). It is difficult to see a close, meaningful relationship between Wilson's ability to meet this infrequent schedule and her ability to be present and on-task for a full-time job.

proceedings consistent with this report and recommendation.


Dated: November 27, 2017               s/ William H. Baughman, Jr.
                                       United States Magistrate Judge




## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[82]

---

[82] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).